**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| RYAN MURPHY, derivatively on behalf of LKQ CORPORATION,<br><br>Plaintiffs,<br>v.<br><br>GUHAN SUBRAMANIAN, DOMINICK P. ZARCONE, ANDREW C. CLARKE, BLYTHE J. MCGARVIE, PATRICK BERARD, JODY G. MILLER, JOHN W. MENDEL, MEG A. DIVITTO, XAVIER URBAIN, JAMES S. METCALF, JOSEPH M. HOLSTEN, JUSTIN JUDE, AND RICK GALLOWAY,<br><br>Defendants,<br><br>-and-<br><br>LKQ CORPORATION, a Delaware Corporation,<br><br>Nominal Defendant. | ) | Case No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Ryan Murphy ("Plaintiff"), derivatively on behalf of LKQ Corporation ("LKQ" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *City of Miami General Employees' & Sanitation Employees' Retirement Trust et al. v. LKQ Corporation et al.* (M.D. Tn., Nashville

Div. Case 3:26-cv-00498) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; and (iv) other publicly available information.

## NATURE OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of LKQ, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least February 27, 2023, to July 23, 2025 (the "Relevant Time Period"). During that time, the Defendants (as defined herein) caused or allowed LKQ to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2. LKQ is a global distributor of replacement parts for automobile repairs.

3. In February 2023, LKQ revealed its intention to acquire its competitor, Uni-Select Incorporated ("Uni-Select"), including Uni-Select's U.S. subsidiary, FinishMaster. FinishMaster provides automotive refinish and painting services at roughly 200 locations nationwide and generates about 40% of Uni-Select's yearly revenue. LKQ paid approximately $2.1 billion to complete the acquisition of Uni-Select.

4. Throughout the Relevant Period, LKQ consistently emphasized the advantages of the acquisition. When announcing the transaction in February 2023, LKQ described it as a "compelling strategic fit" that would "enhance LKQ's business and drive profitable growth." The Company further asserted that the deal involved "minimal integration risk," noting that "UniSelect's FinishMaster business improves LKQ's scale and product mix to compete" in the North American automotive paint segment.

5. After finalizing the acquisition in August 2023, LKQ proceeded to integrate FinishMaster into its North American operations. During the Relevant Period, Defendants

characterized the integration as a "highly synergistic opportunity" aimed at preventing loss of market share to competitors. As integration efforts progressed, Defendants reassured investors that the process remained "on target" and positioned the Company to "capitalize on revenue synergies" that "weren't there prior to th[e] acquisition."

6. These and similar statements made during the Class Period were materially false. In reality, FinishMaster was experiencing the loss of significant customers and declining market share, including the departure of key clients essential to its revenue. As LKQ later acknowledged, these losses had already begun prior to the acquisition and intensified as LKQ proceeded with integrating FinishMaster into its operations.

7. The truth began to come to light on April 23, 2024, when LKQ caught investors off guard by reducing its financial guidance, attributing the revision to weak demand in its North American segment, where FinishMaster was being integrated. The Company also disclosed that CEO Dominick Zarcone, who had overseen the Uni-Select acquisition, would be leaving the Company. Following these announcements, LKQ's stock price fell by $7.28 per share, or 14.9%. Nevertheless, the Company reassured investors that the Uni-Select acquisition "was the right thing to do long term" and that it had "uncovered additional synergies" during the integration of FinishMaster.

8. On July 25, 2024, additional details came to light when LKQ announced disappointing results for its second fiscal quarter of 2024. The Company disclosed that it had fallen short of revenue expectations for the quarter and further reduced its financial guidance for the remainder of the fiscal year, again citing weakening demand in its North American segment. Following these disclosures, LKQ's share price dropped by $5.53 per share, or 12.4%. In response,

Defendants reassured investors that the acquisition of FinishMaster "helped improve our margins despite the lower revenue."

9. However, on October 24, 2024, LKQ revealed the underlying cause of its declining performance and repeated guidance cuts. The Company disclosed that the FinishMaster business, which was previously promoted as a driver of revenue growth and market share protection, was actually losing business, including significant customers to competitors. LKQ further acknowledged that these losses began "pre-acquisition or pre-closing and leading into post-acquisition." Despite this, Defendants maintained that the business had "stabilized" and that LKQ would "win back [the] business" it had lost.

10. Then, on April 24, 2025, LKQ disclosed that, contrary to its prior assurances, its North American segment, where FinishMaster had been fully integrated, continued to lose market share as competitors persistently underpriced LKQ, leading the Company to fall short of its revenue and margin targets. Following these disclosures, LKQ's share price declined by an additional $4.87 per share, or 11.6%.

11. Finally, on July 24, 2025, LKQ reported that its ongoing market share losses further impacted performance, causing the Company to miss margin targets once again. As a result, LKQ's share price dropped another $6.88 per share, or 17.8%.

12. Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements in breach of their fiduciary duties to the Company.

## **PARTIES**

**A. Plaintiff**

13. Plaintiff is a current shareholder of LKQ and has continuously held LKQ stock during all times relevant hereto and is committed to retaining LKQ shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of LKQ and its shareholders in enforcing its rights.

**B. Nominal Defendant**

14. Nominal Defendant LKQ is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 5846 Crossings Boulevard, Antioch, Tennessee 37013. LKQ common stock trades on the Nasdaq Global Select Market under the ticker symbol "LKQ."

**C. Individual Defendants**

15. Defendant Guhan Subramanian had been a director of the Company since 2013, and Chairman of the Board from 2022 until he stepped down in August of 2025.

16. Defendant Dominick P. Zarcone was the Company's President & CEO from 2017 until June 2024 and was a director of the Company from 2017 until the 2025 Annual Meeting.

17. Defendant Justin L. Jude has served as the Company's President, CEO, and a director of the Company since June 2024.

18. Defendant Andrew C. Clarke has been a director of the Company since July 2024.

19. Defendant Blythe J. McGarvie had been a director of the Company from 2012 until the 2025 Annual Meeting.

20. Defendant Patrick Berard has been a director of the Company since 2019.

21. Defendant Jody G. Miller has been a director of the Company from 2018 until 2026.

22. Defendant John W. Mendel has been a director of the Company since 2018 and has been the Chairman of the Board since August 2025.

23. Meg A. Divitto has been a director of the Company since December 2024.

24. Xavier Urbain has been a director of the Company since December 2024.

25. James S. Metcalf has been a director of the Company since December 2024.

26. Joseph M. Holsten had been a director of the Company from 1998 until May 2024.

27. The foregoing Defendants are herein referred to as "Director Defendants."

28. Defendant Rick Galloway served as SVP and CFO of the Company.

29. Defendants Jude, Galloway, and Zarcone are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

31. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

32. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

33. Venue is proper in this court under 28 U.S.C. § 1391, because LKQ is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Company Background

34. LKQ is a worldwide distributor of alternative collision replacement parts, recycled engines, and other automotive components used in vehicle repair.

35. In 2023, amid increasing competition, LKQ announced its approximately $2.1 billion acquisition of its competitor Uni-Select, including Uni-Select's U.S. subsidiary, FinishMaster. LKQ told investors that the transaction would strengthen its business and expand its market share.

36. On July 27, 2023, LKQ filed its quarterly report on Form 10-Q with the SEC for the second quarter of fiscal year 2023. In that filing, the Company stated that "[t]he Uni-Select Acquisition will complement our existing North American paint distribution operations and provides a scaled position in the Canadian mechanical parts space, with opportunity for future consolidation and growth."

37. That same day, LKQ held an earnings call with analysts and investors to review its second quarter 2023 financial results. During the call, an analyst asked Defendant Zarcone about the anticipated synergies from the acquisition given the Company's increased insight into Uni-Select's business. In response, Defendant Zarcone told investors that the Company is "highly

confident that there is $55 million of cost synergies that we will be able to get our hands on over the first kind of three years post-transaction."

38. On October 26, 2023, LKQ conducted another earnings call with analysts and investors to discuss its third quarter 2023 financial results. During that call, Defendant Zarcone highlighted several "highlights" from the quarter, stating that "[o]n August 1, we announced the completion of the Uni-Select acquisition, a bespoke and highly synergistic opportunity that will add positive long-term shareholder value and further widen the competitive moat around our North American business."

**B. LKQ's False and Misleading Statements**

39. On February 27, 2023, LKQ announced that it had entered into a definitive agreement to acquire its competitor, Uni-Select, including Uni-Select's United States segment, FinishMaster. In the press release announcing the agreement, Defendants assured investors that "[t]he addition of Uni-Select will enhance LKQ's business and drive profitable growth" and that "Uni-Select's FinishMaster business improves LKQ's scale and product mix to compete in this attractive and growing segment with minimal integration risk."

40. That same day, LKQ executives hosted a call with analysts and investors to discuss the transaction further. During the call, Defendant Zarcone stated that "[t]here are some very significant financial benefits that will accompany this acquisition."

41. On July 27, 2023, LKQ filed its quarterly report on Form 10-Q with the SEC for the second quarter of fiscal year 2023. In that filing, the Company stated that "[t]he Uni-Select Acquisition will complement our existing North American paint distribution operations and provides a scaled position in the Canadian mechanical parts space, with opportunity for future consolidation and growth."

42. That same day, LKQ held an earnings call with analysts and investors to review its second quarter 2023 financial results. During the call, an analyst asked Defendant Zarcone about the anticipated synergies from the acquisition given the Company's increased insight into Uni-Select's business. In response, Defendant Zarcone told investors that the Company is "highly confident that there is $55 million of cost synergies that we will be able to get our hands on over the first kind of three years post-transaction."

43. On October 26, 2023, LKQ conducted another earnings call with analysts and investors to discuss its third quarter 2023 financial results. During that call, Defendant Zarcone highlighted several "highlights" from the quarter, stating that "[o]n August 1, we announced the completion of the Uni-Select acquisition, a bespoke and highly synergistic opportunity that will add positive long-term shareholder value and further widen the competitive moat around our North American business."

44. On February 22, 2024, LKQ filed a Form 8-K with the SEC reporting its results of operations and financial condition. In that filing, the Company provided an update on the ongoing Uni-Select integration, noting that approximately half of the FinishMaster locations had, to date, been converted or consolidated into LKQ locations. Specifically, Defendant Jude stated that "[o]ur Wholesale – North America team's agility and integration experience has the Uni-Select plan ahead of schedule, and we are confident in our ability to exceed the $55 million of synergies previously disclosed."

45. That same day, LKQ held an earnings call with analysts and investors to discuss its fourth quarter 2023 financial results. During the call, Defendant Galloway further addressed the progress of the Uni-Select integration, stating that "[t]he Uni-Select integration is progressing ahead of schedule. And with FinishMaster and LKQ locations merging, it's becoming increasingly

difficult to determine a stand-alone Uni-Select impact. Therefore, we will not provide specific Uni-Select impacts on the North American results going forward, but we'll instead report just on synergy achievement."

46. During the same earnings call, Defendant Jude reiterated his "confident[ce] of [LKQ's] ability to generate positive, operational and financial returns with our Uni-Select business integration." He also addressed the Company's progress with the Uni-Select acquisition and the integration of FinishMaster, explaining that "the North American wholesale team is focused on the integration of our Uni-Select acquisition and taking full advantage of the tremendous synergies that exist within our global footprint." Defendant Jude further stated, "I'm extremely proud of how the team is performing with the integration."

47. On April 23, 2024, LKQ filed a Form 8-K with the SEC reporting its results of operations and financial condition. In announcing its first quarter 2024 results, the Company highlighted that "Uni-Select synergies accelerated and increased from $55 million to $65 million."

48. That same day, LKQ hosted an earnings call with analysts and investors to review its first quarter 2024 financial performance. In his opening remarks, Defendant Jude stated, "I want to again emphasize that Uni-Select was a unique opportunity that will enable us to widen the moat around our North American business and capitalize on revenue synergies that exist with paint and hard parts. I am confident and committed to this transaction, generating positive financial metrics for all stakeholders." During his closing remarks, Defendant Jude further emphasized "the Uni-Select acquisition that's going to bring us tremendous synergies."

49. The foregoing statements were materially false and misleading, and failed to disclose materially adverse facts about the Company's business and operations. Specifically, the

statements failed to disclose that: (a) in reality, FinishMaster had been losing significant customers since the acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share; and (b) while LKQ purported to caution investors about risks associated with the Uni-Select acquisition and the integration of FinishMaster, it failed to disclose that those risks had already materialized and were adversely affecting the Company's operational and financial results.

**C. The Truth is Revealed**

50. The truth began to come to light on April 23, 2024, when LKQ reduced both its revenue and earnings guidance for the 2024 fiscal year. The Company attributed the downward revision in its earnings outlook to deteriorating performance in its North American operations, where FinishMaster was being integrated, while attributing the decline to softer demand and warmer weather reducing the need for auto repairs. LKQ also announced that Defendant Zarcone, who had overseen the Uni-Select acquisition and FinishMaster integration, would be leaving the Company. Following these disclosures, LKQ's stock price fell by $7.28 per share, or 14.9%.

51. Following these disclosures, Defendants reassured investors that the acquisition "was the right thing to do long term" and that LKQ's integration of FinishMaster had even "uncovered additional synergies" beyond initial expectations.

52. The foregoing statements described were materially false and misleading. In reality, FinishMaster had been losing key customers since the acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share.

53. On July 25, 2024, LKQ reported disappointing financial results for the second quarter of 2024, failing to meet even the reduced revenue targets it had set just one quarter earlier. The Company attributed these results to demand-related challenges affecting its North American

operations and again lowered its financial guidance for the 2024 fiscal year. Nevertheless, Defendants stated that "accelerating the FinishMaster integration" had "helped improve our margins despite the lower revenue." Following these disclosures, LKQ's share price declined by $5.53 per share, or 12.4%. CEO Dominick Zarcone had departed the Company in June 2024, less than a month before these results were announced.

54. Then, on October 24, 2024, LKQ further disclosed that its recent earnings shortfalls were driven by the underperformance of the FinishMaster business, acknowledging that it had been experiencing significant customer losses since the acquisition was first announced.

55. However, on that same day, LKQ reassured investors that it had "moderated the loss and started to grow share."

56. On February 20, 2025, LKQ held an earnings call with analysts and investors to discuss its financial results for the fourth quarter of fiscal year 2024. During the call, Defendant Jude highlighted the Company's performance in 2024 and specifically emphasized the integration of FinishMaster into LKQ's network, stating, "[n]ot only did the North American team deliver the integration faster than expected, but with a higher level of synergies than originally planned."

57. These statements described above were materially false and misleading. In reality, FinishMaster had been losing significant customers since the acquisition was announced, and its business was unable to support, much less reverse, LKQ's declining market share.

58. Then, on April 24, 2025, LKQ reported that its Wholesale North America segment, where FinishMaster had been fully integrated, fell short of quarterly revenue expectations by approximately $200 million. The Company also disclosed that, contrary to prior assurances that FinishMaster would improve margins, the segment missed adjusted EBITDA targets by $24

million and experienced a year-over-year decline of 9%. Following this announcement, LKQ's share price dropped by an additional $4.87 per share, or 11.6%.

59. On July 24, 2025, LKQ further reported that the segment's margin performance continued to worsen, as competitors gained market share by consistently underpricing LKQ. The Company again missed EBITDA targets by roughly $20 million and reported a year-over-year decline of 11%. LKQ acknowledged that its declining earnings and margins were primarily driven by lost business due to increased competition within the industry. As a result of these disclosures, LKQ's share price fell by another $6.88 per share, or 17.8%.

**D. Defendants' Misconduct Has and Continues to Harm the Company**

60. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

61. LKQ's reputation and goodwill have also been damaged by the Defendants' misconduct.

**E. LKQ Issues False and Misleading Proxy Statements**

62. In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue false and misleading proxy statements during the Relevant Period, including the Schedule 14A Proxy Statements issued on March 20, 2023, March 22, 2024, and March 25, 2025 (the "False Proxies"), that sought stockholder votes to, among other things, re-elect the Director Defendants to serve on the Board.

63. The Director Defendants drafted, approved, reviewed, and/or signed the False Proxies before they were filed with the SEC and disseminated to LKQ's stockholders. The Director

Defendants negligently issued materially misleading statements in the False Proxies. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the FalseProxies allegations and related claims.

64. In support of re-electing themselves, the Director Defendants highlighted their supposed oversight of the Company in the False Proxies. The 2023 Proxy stated:

> We have processes in place to manage our key strategic, operational, financial, and compliance risks. Our entire Board of Directors is responsible for monitoring and evaluating the risks we face and our risk management processes. We implement our risk management processes through the regular reports to the Board of such risks by our Chief Executive Officer and other appropriate executives (including our Chief Financial Officer and our General Counsel) with respect to matters within their areas of expertise, including such matters as acquisitions, capital raising transactions, financial accounting matters and legal issues.
>
> Our Board members engage in discussions with these officers regarding their areas of expertise, including assessments of the risks relating thereto. In addition, our Corporate Audit department develops a risk-based audit plan annually that is reviewed with our Audit Committee, along with the results of internal audit reviews and activities. We also have a Risk Management Committee ("RMC") composed of key members of management including our business units. The purpose of the RMC is to identify and prioritize enterprise-wide strategic risks, assign owners to such risks, and track remediation efforts. The RMC periodically reports its findings to the Board of Directors

65. The 2024 and 2025 Proxies stated:

> We have processes in place to manage our key strategic, operational, financial and compliance risks. Our entire Board of Directors is responsible for monitoring and evaluating the risks we face and our risk management processes. We implement our risk management processes through the regular reports to the Board of such risks by our Chief Executive Officer and other appropriate executives (including our Chief Financial Officer and our General Counsel) with respect to matters within their areas of expertise, including such matters as acquisitions, capital raising transactions, financial accounting matters and legal issues. Our Board members engage in discussions with these officers regarding their areas of expertise,

> including assessments of the risks relating thereto. In addition, our Corporate Audit department develops a risk-based audit plan annually that is reviewed with our Audit Committee, along with the results of internal audit reviews and activities. We also have a Risk Management Committee ("RMC") composed of key members of management including our business units. The purpose of the RMC is to identify and prioritize enterprise-wide strategic risks, assign owners to such risks and track remediation efforts. The RMC periodically reports its findings to the Board of Directors.
>
> The Board of Directors, in coordination with the Audit Committee of the Board and the RMC, also oversees the Company's programs for monitoring the Company's information security status. The Company's cybersecurity policies, standards, processes and practices are fully integrated into the Company's operations and are based on recognized frameworks established by the International Organization for Standardization, the National Institute of Standards and Technology and other applicable industry standards. In general, the Company seeks to address cybersecurity risks through a comprehensive, cross-functional approach that is focused on preserving the confidentiality, integrity and availability of the information that the Company collects and stores by identifying, preventing and mitigating cybersecurity threats and effectively responding to cybersecurity incidents when they occur. The Company's Chief Information Officer and the Chief Information Security Officer present a formal report to the Board of Directors at least annually covering the security threat landscape, security incidents affecting the Company and the readiness of the Company's security program. Several members of the Board have experience in the digital technology area and are thus particularly suited to overseeing the Company's information security matters. The Company carries a global cyber liability insurance policy that we believe is appropriate for our Company's risk.

66. The False Proxies thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning that (a) in reality, FinishMaster had been losing significant customers since the acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share; and (b) while

LKQ purported to caution investors about risks associated with the Uni-Select acquisition and the integration of FinishMaster, it failed to disclose that those risks had already materialized and were adversely affecting the Company's operational and financial results.

67. As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect the Director Defendants to the Board.

**F. The Board Breached its Fiduciary Duties**

68. As officers and/or directors of LKQ, the Defendants owed LKQ fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage LKQ in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of LKQ, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

69. Defendants, because of their positions of control and authority as directors and/or officers of LKQ, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding LKQ's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

70. To discharge their duties, the officers and directors of LKQ were required to exercise reasonable and prudent supervision over the management, policies, practices and controls

of the Company. By virtue of such duties, the officers and directors and LKQ were required to, among other things:

(a) Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b) Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d) Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f) Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g) Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

71. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

72. The Board's Audit Committee is tasked with overseeing LKQ's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of LKQ's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- Review significant accounting and reporting issues, including recent professional and regulatory pronouncements and consider their impact on the financial statements.

- In consultation with the independent auditor and the VP - Corporate Audit, review the integrity of the Company's financial reporting processes, both internal and external.

- Consider the independent auditor's judgments about the quality and appropriateness of the Company's accounting principles as applied in its financial reporting.

- Discuss policies with respect to risk assessment and risk management with management and the independent auditor.

- Establish regular and separate quarterly systems of reporting to the Audit

Committee by management, the independent auditor and the VP - Corporate Audit to review the financial 6 statements and to discuss significant judgments made in preparation of the financial statements and the view of each as to the appropriateness of such judgments.

- Review and discuss with management and the independent auditor the Company's annual and interim financial statements and determine whether they are complete and consistent with the information known to committee members, and assess whether the financial statements reflect appropriate accounting principles.

- Review and approve all material related party transactions, or series of transactions, that are required to be disclosed pursuant to applicable SEC regulations.

- Review with management and the independent auditor the accounting treatment accorded significant transactions, any significant accounting issues, the development, selection and disclosure of critical accounting estimates, regulatory and accounting initiatives, off-balance sheet structures, and the Company's use of reserves and accruals.

- 35. Investigate complex and/or unusual transactions such as restructuring charges and derivative disclosures.

- 36. Following completion of the annual audit, review separately with each of management, the independent auditor and the VP - Corporate Audit any audit problems or difficulties encountered during the course of the audit, management's response to such problems, any restrictions on the scope of work or access to required information, and any significant disagreement among management and the independent auditor or the VP - Corporate Audit in connection with the preparation of the financial statements.

- Consider and approve, if appropriate, major changes to the Company's auditing and accounting principles and practices as suggested by the independent auditor, management or the VP - Corporate Audit.

- Review with the independent auditor, the VP - Corporate Audit and management the extent to which changes or improvements in financial or accounting practices, as approved by the Audit Committee, have been implemented by management.

- Provide oversight for all matters related to the security of and risks related to information technology systems and procedures and cybersecurity.

73. In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Clarke, Berard, Urbain, and Metcalf (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

74. In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

75. The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted and will continue to inflict significant harm on LKQ.

## DERIVATIVE ALLEGATIONS

76. Plaintiff brings this action derivatively in the right and for the benefit of LKQ to redress injuries suffered by LKQ as a direct result of the Director Defendants' breaches of fiduciary

duty. LKQ is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

77. Plaintiff will adequately and fairly represent the interests of LKQ in enforcing and prosecuting the Company's rights.

78. Plaintiff was a stockholder of LKQ at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a LKQ stockholder.

## DEMAND FUTILITY ALLEGATIONS

79. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

80. The LKQ Board currently has seven (7) members, two of which joined after the Relevant Period.

81. Plaintiff has not made any demand on LKQ's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

### A. Defendant Berard Lacks Independence

82. As alleged above, Defendant Berard breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly, Defendant Berard faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

83. Defendant Berard faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Berard breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant

Berard had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

84. In addition, Defendant Berard owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, the Defendant Berard knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

85. Additionally, Defendant Berard is a member of the Company's Audit Committee.

86. One of the Audit Committee's responsibilities is risk oversight and management.

87. Defendant Berard was a member of the Audit Committee during the Relevant Time Period and was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through his knowledge or reckless disregard, Defendant Berard caused improper statements by the Company. Accordingly, Defendant Berard breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

**B. Defendant Clarke Lacks Independence**

88. As alleged above, Defendant Clarke breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly,

Defendant Clarke faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

89. Defendant Clarke faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Clarke breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Clarke had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

90. In addition, Defendant Clarke owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Clarke knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

91. Additionally, Defendant Clarke is the Chairman of the Company's Audit Committee.

92. One of the Audit Committee's responsibilities is risk oversight and management.

93. Defendant Clarke was a member of the Audit Committee during the Relevant Time Period and was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through his knowledge or reckless disregard, Defendant Clarke caused improper statements by the Company.

Accordingly, Defendant Clarke breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

**C. Defendant Divitto Lacks Independence**

94. As alleged above, Defendant Divitto breached her fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of herself to the Board. Accordingly, Defendant Divitto faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon her is therefore futile.

95. Defendant Divitto faces a substantial likelihood of liability for her individual misconduct. As alleged above, Defendant Divitto breached her fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Divitto had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

96. In addition, Defendant Divitto owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, the Defendant Divitto knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

97. Additionally, Defendant Divitto is a member of the Company's Audit Committee.

98. One of the Audit Committee's responsibilities is risk oversight and management. Defendant Divitto was a member of the Audit Committee during the Relevant Time Period and was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through her knowledge or reckless disregard, Defendant Divitto caused improper statements by the Company. Accordingly, Defendant Divitto breached her fiduciary duty of loyalty and good faith because she participated in the misconduct described above. She faces a substantial likelihood of liability for these breaches, making any demand on her futile.

**D. Defendant Jude Lacks Independence**

99. Defendant Jude is the current President and Chief Executive Officer ("CEO") of LKQ Corporation, having been appointed to the role in July 2024. Jude has been with LKQ since 2004 and previously held roles such as Senior Vice President of LKQ and President of LKQ's Wholesale North America segment.

100. Defendant Jude joined LKQ's Board of Directors in 2024.

101. Defendant Jude is an executive officer of and currently employed by LKQ. Defendant Jude received compensation of $4,501,186 in 2024. Defendant Jude depends on LKQ for his income. In addition, LKQ stated in the Schedule 14A Proxy Statement filed with the SEC on March 25, 2025, that Defendant Jude is not independent pursuant to SEC and NYSE rules.

102. As alleged above, Defendant Jude breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly, Defendant Jude faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

103. Defendant Jude faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Jude breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Jude had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

104. In addition, Defendant Jude owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Jude knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

105. Accordingly, Defendant Jude breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

**E. Defendant Mendel Lacks Independence**

106. As alleged above, Defendant Mendel is the Chairman of the Board. Defendant Mendell breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly, Defendant Mendel faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

107. Defendant Mendel faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Mendel breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Mendel had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

108. In addition, Defendant Mendel owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Mendel knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

109. Accordingly, Defendant Mendel breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

**F. Defendant Metcalf Lacks Independence**

110. As alleged above, Defendant Metcalf breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly, Defendant Metcalf faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

111. Defendant Metcalf faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Metcalf breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Metcalf had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

112. In addition, Defendant Metcalf owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Metcalf knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

113. Additionally, Defendant Metcalf is a member of the Company's Audit Committee.

114. One of the Audit Committee's responsibilities is risk oversight and management.

115. Defendant Metcalf was a member of the Audit Committee during the Relevant Time Period and was thus responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Through his knowledge or reckless disregard, Defendant Metcalf caused improper statements by the Company. Accordingly, Defendant Metcalf breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

### G. Defendant Urbain Lacks Independence

116. As alleged above, Defendant Urbain breached his fiduciary duties by negligently issuing the materially False Proxies, soliciting the reelection of himself to the Board. Accordingly, Defendant Urbain faces a substantial likelihood of negligence liability for issuing the False Proxies and any demand upon him is therefore futile.

117. Defendant Urbain faces a substantial likelihood of liability for his individual misconduct. As alleged above, Defendant Urbain breached his fiduciary duties by allowing the Company to issue the materially false and misleading statements described above. Defendant Urbain had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate.

118. In addition, Defendant Urbain owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, Defendant Urbain knowingly and/or with reckless disregard reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of LKQ.

119. Additionally, Defendant Urbain is a member of the Company's Audit Committee.

120. One of the Audit Committee's responsibilities is risk oversight and management.

121. Defendant Urbain was a member of the Audit Committee during the Relevant Time Period and was thus responsible for knowingly or recklessly allowing the improper statements

related to the Company's earnings guidance and financial and disclosure controls. Through his knowledge or reckless disregard, Defendant Urbain caused improper statements by the Company. Accordingly, Defendant breached his fiduciary duty of loyalty and good faith because he participated in the misconduct described above. He faces a substantial likelihood of liability for these breaches, making any demand on him futile.

122. The Director Defendants making or authorization of these false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of LKQ to recover damages sustained as a result of this misconduct, they would expose themselves and their colleagues to significant liability. For this reason, demand is futile as to the Director Defendants.

### H. Defendant Galloway is not Independent

123. Defendant Galloway is the SVO and CFO of LKQ, having been appointed to the role in September 2022.

124. Defendant Galloway is an executive officer of and currently employed by LKQ. Defendant Galloway received compensation of $2,249,938 in 2024. Defendant Galloway depends on LKQ for her income. In addition, LKQ stated in the Schedule 14A Proxy Statement filed with the SEC on March 25, 2024, that Defendant Galloway is not independent pursuant to SEC and NYSE rules.

125. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

126. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

127. Each of the Defendants owed and owes LKQ the highest obligations of loyalty, good faith, due care, and oversight.

128. Each of the Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

129. The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

130. In addition, the Director Defendants further breached their fiduciary duties owed to LKQ by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that (a) in reality, FinishMaster had been losing significant customers since the acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share; and (b) while LKQ purported to caution investors about risks associated with the Uni-Select acquisition and the

integration of FinishMaster, it failed to disclose that those risks had already materialized and were adversely affecting the Company's operational and financial results.

131. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

132. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

133. As a direct and proximate result of the breaches of duty alleged herein, LKQ has sustained and will sustain significant damages.

134. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

135. Plaintiff, on behalf of LKQ, has no adequate remedy at law.

## COUNT II
## Breach of Fiduciary Duty
## (Derivatively Against the Officer Defendants)

136. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

137. The Officer Defendants are executive officers of the Company. As executive officers, The Officer Defendants owed and owe LKQ the highest obligations of loyalty, good faith, due care, oversight, and candor.

138. The Officer Defendants breached their fiduciary duties owed to LKQ by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that (a) in reality, FinishMaster had been losing significant customers since the acquisition was announced, and its business was unable to support, let alone reverse, LKQ's declining market share; and (b) while LKQ purported to caution investors about risks associated with the Uni-Select acquisition and the integration of FinishMaster, it failed to disclose that those risks had already materialized and were adversely affecting the Company's operational and financial results.

139. The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

140. As a direct and proximate result of the breaches of duty alleged herein, LKQ has sustained and will sustain significant damages.

141. As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

142. Plaintiff, on behalf of LKQ, has no adequate remedy at law.

## COUNT III
## Violation of Section 14(a) of the Exchange Act
## (Against The Director Defendants)

143. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

144. The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

145. The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the False Proxies. In the False Proxies, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

146. The False Proxies, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, LKQ misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

147. Plaintiff, on behalf of LKQ, thereby seeks relief for damages inflicted upon the Company based upon the False Proxies in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of LKQ and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of LKQ for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding LKQ restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 26, 2026

*Michael K. Atkins*
Michael K. Atkins, Esq. (BPR #017862)
**REYNOLDS, ATKINS,**
**BREZINA & STEWART, PLLC**
606 W. Main Street, Suite 225
Knoxville, Tennessee 37902
(865) 525-0505 Office
(865) 805-5075 Cell
mka@rabslaw.com

*Counsel for Plaintiff*